OPINION
This is an appeal from a judgment of the Dayton Municipal Court granting the relief sought by the plaintiffs, Nirmal and Rosemary Mondal, in an action for forfeiture of the rights of the defendant, Joseph Sunday, in a land installment contract and for restitution of the premises located at 2 Van Buren Street, Dayton, Ohio. The land contract was executed by the parties on August 5, 1996. Under the contract, Mr. Sunday purchased the property for $126,000.00, putting down $10,000.00, and promising to pay the rest in monthly installments of $1,300.00.
In seeking the forfeiture, under the provisions of R.C. 5313.06, Mr. and Mrs. Mondal relied upon Article 6 of the land contract, which required the buyer to maintain the property in a good condition and state of repair. However, the underlying dispute leading to the action was precipitated by an automobile accident which occurred at the property in May, 1999, and resulted in damage to the front porch. Such damage was not repaired, and on June 14, 1999, the City of Dayton, through its housing inspector, issued a Notice of Violations to the appellant ordering that corrective action be taken.
At the trial of this matter, the evidence, as a whole, might be fairly described as sketchy and uncertain, but a letter sent by counsel for the Mondals to Sunday, who represented himself at the trial, reflects the real nature of the issue raised by the pleadings. Such letter, which was dated June 25, 1999, provides as follows:
 "Under Article 6 of the Land Installment Contract appearing at Page 5 you are required to maintain the property in as good a condition and state of repair as it was as of the date of the original contract with reasonable wear and tear excepted. My client has received a copy of Notice of Violations dated June 5, 1998 which apparently went to court under Case No. 98-CRB-15467 against you. My client has also received a Notice of Violations dated June 14, 1999. Each of these notices detail specific problems with the property and copies of the matters cited are enclosed herewith and incorporated herein.
My clients are also aware of the fact that an accident occurred whereby an automobile struck the structure on the property. It is assumed that the latest Notice of Violation dated June 14, 1999 refers to that matter. My clients have attempted to contact you but have failed to do so and have obtained bids to repair the damage and made the necessary contacts with their insurance company to see that the matter is taken care of.
Finally, my clients also notice that a portion of the roof on one of the gables in the rear of the house has been damaged. Shingles are missing which would allow the weather to penetrate the structure and thus cause interior damage to the property.
Before a default can be declared under your agreement with my clients, my clients are required to give you notice under Article 12 of the Agreement on Page 8. You have a period of 30 days in which to correct the deficiencies or my clients will be permitted to declare a default in the contract. My clients would prefer that all of these matters would be taken care of immediately rather than force a termination of the agreement but that will be your choice. I have advised them that if they allow the property to continue to deteriorate that their security for the payment of the balance you owe to them will be seriously impaired. Hopefully, you will make all necessary repairs and that can be avoided.
Again, you have thirty days in which to make the necessary repairs. If you cannot do that, you are advised to contact me or to have your attorney do so to make some alternate arrangements that may be acceptable to my clients. If nothing is heard from you we will expect the property to be repaired within the 30 day period allowed under the agreement. If that does not occur, you will be in default under the terms of the contract itself which leaves the option to my clients to require the payment of the balances and the right to enforce the terms of the contract itself."
In a subsequent letter, dated July 28, 1999, counsel for the Mondals notified Sunday "that the contract will stand forfeited unless you perform the terms and conditions of the contract within ten days of your receipt of this notice." Then, on August 12, 1999, the plaintiffs commenced this action for forfeiture and restitution.
In the present appeal, the appellant has set forth two assignments of error, the first of which has been stated as follows:
 THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S OBJECTION TO THE MAGISTRATE'S DECISION THAT APPELLEE HAD UNCLEAN HANDS, AND THAT SAME BARRED THE EQUITABLE RELIEF OF FORFEITURE.
In his pleading, and at the trial, Mr. Sunday alleged that the insurance company would not work with him relative to the damages to the structure because he was not the title owner of the property. In arguing that the appellees had "unclean hands", Sunday alludes to a provision of Article 5 of the contract, which provides that "seller and buyer shall both be named as insured parties in the insurance policies * * *."
However, the appellant's argument ignores a subsequent and alternate provision of the contract, which specifically provides as follows:
 "Seller, at seller's option, may obtain and maintain the fire and extended insurance policy provided for in this Article 5 (a copy of which shall be delivered to buyer) and may pay directly the real estate taxes and assessments provided for in Article 3, above, in which event Buyer shall pay to Seller, within 15 days after Seller notifies Buyer in writing of the amount of the same, the amount of such real estate taxes and insurance premiums."
Moreover, the insurance on the property was in place at the time of the execution of the contract, and the parties had operated, therefore, under the latter paragraph of Article 5.
At the trial of this matter on September 23, 1999, the evidence disclosed that the termination of the contract between the parties may have been traceable to a lack of reasonable communication, but the trial court, in resolving the issues of fact, was confined to the relative positions of the parties when the forfeiture action was filed on August 12, 1999. Prior to that time, the appellees had complied with the statutory requirements of R.C. 5313.05 and R.C. 5313.06, and the nature of the default under Article 6 of the contract demanded immediate attention. Hence, this court is not disposed to disturb the findings of the trial court that the defendant did not take the action necessary to maintain the property in a good condition and state of repair. Accordingly, the first assignment of error is overruled.
The second assignment of error has been submitted as follows:
 THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S OBJECTION TO THE MAGISTRATE'S DECISION THAT APPELLANT HAD NOT PAID MORE THAN TWENTY PERCENT (20%) OF THE PURCHASE PRICE UNDER THE LAND CONTRACT, THEREBY REQUIRING RESORT TO A FORECLOSURE ACTION.
With respect to this alleged error, the appellant correctly observes that if the vendee of a land installment contract has paid toward the purchase price a total sum equal to or in excess of twenty percent thereof, the vendor may recover possession of his property only by use of a proceeding for foreclosure and judicial sale. R.C. 5313.07. And this court is not unaware of the dim view and rank disfavor which the law attaches to forfeitures.
However, a careful examination of the record has failed to disclose anything that might justify any departure from the finding of the trial court that the balance of the principal due was $101,772.00, which is $972.00 more than eighty percent of the purchase price of $126,000.00. In fact, we have even taken an unauthorized glimpse of the amortization schedule attached by the appellant to his brief, and it likewise fails to show a balance of less than $100,800.00. While the evidence shows that the Mondals did not provide Sunday with an annual statement, as required by R.C. 5313.03, there is no evidence in the record, or any affirmative suggestion, that such failure changed the balance due or was otherwise prejudicial to the rights of the vendee. We cannot merely presume prejudice from the failure of the Mondals to comply with R.C. 5313.03, and the second assignment of error is therefore overruled.
At one time or another, both sides have expressed some reluctance about the termination of their land contract, and it appears that the insurance proceeds will take care of some of the necessary repairs. Thus, one can only speculate as to why we are here, but upon the record presented, the judgment of the Dayton Municipal Court must be affirmed.
GRADY, PJ., and FAIN, J., concur.
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).